# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 29, 2016

Plaintiff-Appellee,

v

No. 327340
Genesee Circuit Court
LC No. 12-031734-FC

KEWON MONTAZZ HARRIS,

Defendant-Appellant.

Before: TALBOT, C.J., and O'CONNELL and OWENS, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony, MCL 750.227b. Following a hearing pursuant to *Miller v Alabama*, 576 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the trial court sentenced defendant to a prison term of 40 to 60 years for the first-degree murder conviction and to a mandatory consecutive 2-year term for the felony-firearm conviction. Defendant appeals as of right. We affirm.

This case arises from the shooting death of teenager Antonio Bell in Mott Park in Flint during the evening hours of June 8, 2012. On that date Bell was playing dice in the park with Raphael Hearns and Jaylin Day. Defendant and D'Angelo Johnson approached the group. Defendant and Bell were members of rival gangs. As Bell, Hearns, and Day subsequently walked up a hill away from defendant and Johnson, who were walking up an opposite hill, gunfire erupted from the direction of the opposite hill. A bullet struck Bell in the head, killing him. Several witnesses were reluctant to testify and offered testimony that was inconsistent with statements previously made to police. Other witnesses, including codefendant Johnson and Hearns, testified that defendant had a gun that day, and another witness, Michael Dixon, testified that he saw defendant shoot Bell.

Defendant first argues that the trial court improperly admitted evidence of defendant's other acts. To avoid forfeiture of an unpreserved, nonconstitutional plain error, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. Once the defendant establishes these three elements, the appellate court must still exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or

-1-

public reputation of the judicial proceedings independent of the defendant's innocence. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show conformity therewith. Such evidence may be admissible to show motive, opportunity, intent, preparation, scheme, plan, system in doing an act, or identity. MRE 404(b)(1). To be admissible under MRE 404(b)(1), other acts evidence must satisfy three requirements: (1) it must be offered for a proper purpose; (2) it must be relevant; and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. A proper purpose is one other than establishing the defendant's character to show a propensity to commit the offense. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), modified 445 Mich 1205; 520 NW2d 338 (1994). "Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character," and "[e]vidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 615–616; 790 NW2d 607 (2010).

Defendant does not provide any citation to the record to support his assertion that the other-acts evidence was introduced solely to prejudice the jury. This Court has stated that a defendant may not leave it to this Court to search for a factual basis to sustain or reject his position. *People v Norman*, 184 Mich App 255, 260; 457 NW2d 136 (1990).

Nonetheless, the record does not support defendant's argument. The prosecutor's theory was that defendant was motivated to kill with premeditated intent based on a threat Bell made to a school liaison police officer that "something was going to happen at school," as well as on defendant's and Bell's gang membership and the rivalry between the gangs and a prior personal fight between defendant and Bell at McKinley School.[1] Defendant's other acts were probative of the issue of motive, which is always relevant in a murder case. *People v Fisher*, 449 Mich 441, 453 n 13; 537 NW2d 577 (1995). Further, the evidence of the gang membership of defendant and various witnesses was relevant to demonstrate how the involved individuals knew each other, to explain the development of defendant as a suspect during the investigation, and to offer a plausible explanation for the disparities between the majority of the youth witnesses' testimony and their prior statements. Throughout the trial, numerous witnesses gave testimony that was inconsistent with statements they had previously given to police, or they purportedly lacked any recall of those statements. The gang affiliation of the witnesses and their potential loyalty was relevant to the credibility of these witnesses. See, e.g., *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001) (the interests and biases of witnesses are always relevant). The probative value of the evidence was not outweighed by the danger of unfair prejudice. MRE 403. The evidence went to the ultimate issue in dispute – whether defendant was the person who shot Bell. The admission of the evidence was not a plain error that affected defendant's substantial rights.

---

[1] Defense counsel's closing argument reveals that counsel understood that the evidence was introduced to establish defendant's alleged motivation to shoot Bell.

The prosecution admittedly failed to give reasonable notice as required by MRE 404(b)(2) that it intended to introduce other acts evidence under MRE 404(b)(1). Because the evidence was admissible under *VanderVliet*, 444 Mich at 52, the lack of notice did not affect defendant's substantial rights. Defendant has failed to offer any argument to show that he could have mounted a successful challenge to the introduction of the evidence had he been given notice of the prosecution's intent. See *People v Hawkins*, 245 Mich App 439, 456; 628 NW2d 105 (2001). Defendant has failed to show plain error affecting his substantial rights as a result of the lack of notice.

Defendant also argues that a *Doyle* [*v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976)] violation occurred and that he was denied his Fifth Amendment right to remain silent when the prosecutor asked a sergeant whether he ever had a chance to "meet him [defendant], talk to him, arrest him?" and the detective responded, "Yes." A *Doyle* violation occurs when a prosecutor makes repeated references to a defendant's silence for the purpose of showing substantive evidence of guilt as well as for impeachment purposes. *People v Shafier*, 483 Mich 205, 218; 768 NW2d 305 (2009). When the prosecutor's question is considered in context, however, it is clear that the question was not intended to, and did not, elicit any statements from the sergeant regarding defendant's silence. The prosecutor never attempted to use defendant's post-*Miranda* silence against him. The question merely established that the sergeant had an opportunity to "meet," "talk to, "arrest" defendant and provided the basis for the sergeant's subsequent identification of defendant in court. No *Doyle* violation occurred. Cf. *People v Dennis*, 464 Mich 567; 628 NW2d 502 (2011). Further, it was the jury, and not the prosecutor, who elicited the sergeant's unsolicited response that defendant had requested an attorney and therefore did not give a statement. The prosecutor did not use the response in a follow-up question or in the closing argument. Defendant has failed to establish plain error affecting his substantial rights.[2]

Defendant also raises a number of issues in a Standard 4 brief. He first argues that the trial court erred by conducting a joinder trial and that the joinder allowed codefendants who had mutually irreconcilable defenses to testify in violation of the Confrontation Clause. However, nothing in the record indicates that defendant's trial was joined with that of any codefendant. This issue is therefore without merit.[3]

---

[2] Defendant also raises an argument regarding the trial court's decision to instruct the jury on M Crim JI 4.1, which concerns "Defendant's Statements as Evidence Against the Defendant." Defendant appears to contend that the court instructed the jury to consider defendant's "statement" that he requested an attorney against defendant. However, defendant did not give a statement because he requested an attorney, and requesting an attorney is not a "statement." The instruction was proper because a number of witnesses testified about statements that defendant allegedly made to those witnesses.

[3] Codefendant Johnson accepted a plea agreement in exchange for his testimony at defendant's trial. The terms of the plea agreement, as well as the penalty, were presented to the jury.

Defendant also argues that he was denied due process because the trial court failed to appoint an expert witness to rebut "several misconceptions regarding [a witness's] preliminary exam testimony" that was read into the record because the witness was unavailable. An indigent defendant may not rely on a trial court's failure to appoint an expert on due process grounds absent a timely request to the court for expert assistance, the request is improperly denied, and the court's ruling renders the trial fundamentally unfair. *People v Leonard,* 224 Mich App 569, 584; 569 NW2d 663 (1997). Because defendant did not make a request for the court to appoint an expert, appellate relief is precluded absent a plain error affecting defendant's substantial rights. *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant has failed to make a coherent argument and has failed to identify the manner in which an expert would have supported his position. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." See *People v Kelly,* 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Even if this issue had not been abandoned, defendant has failed to show plain error affecting his substantial rights.

Defendant next argues that he was denied due process by the trial court's failure to dismiss a juror from whom a court officer detected the smell of marijuana when the juror appeared for trial on the tenth day of trial. The trial court complied with defense counsel's request not to disqualify the juror unless it became apparent that the juror was incapable of "focusing or incapable of participating as a juror." No further discussion was had with respect to the juror, and there is no indication on the record that the juror was under the influence of marijuana or incompetent to sit as a juror. Defendant has failed to establish plain error as a result of the trial court's decision not to remove the juror absent some indication that the juror could not perform the responsibilities of a juror. *Carines,* 460 Mich at 763.

Next, defendant argues that the prosecutor engaged in misconduct by introducing perjured preliminary examination testimony of unavailable witnesses at trial. Defendant failed to object to the testimony on the ground that the testimony was perjured. We therefore review this unpreserved issue for plain error affecting his substantial rights. *Carines,* 460 Mich at 763.

A defendant's constitutional due process rights are violated when his conviction is "obtained through the knowing use of perjured testimony [.]" *People v Aceval,* 282 Mich App 379, 389; 764 NW2d 285 (2009). Defendant has provided no evidence that the witnesses offered perjured testimony. Therefore, defendant has failed to demonstrate plain error affecting his substantial rights.

Lastly, defendant argues that he was entitled to have a jury, and not the trial judge, determine his eligibility for a life-without-parole sentence when the prosecution moved to sentence defendant to a sentence of life without parole under MCL 769.25. However, defendant was not sentenced to life without parole. Rather, at a sentencing hearing required by MCL 769.25(6), the trial court sentenced defendant, who was 15 years old at the time of the offense, to

a prison term of 40 to 60 years.[4] Thus, defendant's argument is misplaced. Nonetheless, in *People v Hyatt*, ___ Mich App ___; ___ NW2d ___ (2016), this Court recently convened a special conflict panel to resolve the conflict between the previous opinion issued in *People v Perkins*, 314 Mich App 140; 885 NW2d 900 (2016), and the decision issued in *People v Skinner*, 312 Mich App 15; 877 NW2d 482 (2015), with respect to whether a juvenile the prosecution seeks to subject to a sentence of life without parole under MCL 769.25 is entitled, under the Sixth Amendment to the United States Constitution, to have a jury determine whether life without parole is warranted. This Court held that a judge, not a jury, is to make this determination.[5] *Hyatt*, ___ Mich App at ___; slip op at 21. Defendant has not demonstrated plain error affecting his substantial rights.

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Donald S. Owens

---

[4] The default sentence is a term of years. See MCL 769.25(4) (providing that absent the prosecution's motion for a life-without-parole sentence, "the court shall sentence the defendant to a term of years as provide in subsection (9)").

[5] Even if this Court had held that it was error for the trial judge to determine whether a sentence of life without parole was warranted, defendant's argument would still be without merit because at best a jury would have determined that life without parole was not warranted, which is the same determination that the trial judge made in this case.